George FARROW and Emma Farrow,
Plaintiffs-Respondents,

v.

Agnes Armstrong TRICKEY and Clyde
Trickey, Defendants-Appellants.

No. 49745.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

Motion for Rehearing or to Transfer to Court
En Banc Denied and Opinion Modified
on Court's Own Motion Jan. 13, 1964.

Buerkle & Lowes, by Albert C. Lowes,
Jackson, for appellants.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for respondents.

HYDE, Judge.

Action to determine title; petition in three counts as follows: I. For recovery of possession, damages for trespass and monthly value of rents and profits; II. For actual and punitive damages for removal of plaintiffs' crops and gravel; III. To determine title in plaintiffs. Defendants' answer denied plaintiffs' claims and contained a counterclaim for actual and punitive damages for trespass and removal of gravel by plaintiffs and sought determination of title in defendants. The court found for plaintiffs on their petition and on defendants' counterclaim, with findings of facts and conclusions of law, and entered a decree adjudging title in plaintiffs in fee to the disputed land with judgment for them for one dollar on Counts I and II. Defendants have appealed.

The land involved is a narrow strip along the west bank of Indian Creek, between the creek and State Route V. Plaintiffs' land is west of the creek and defendants' land is east of it. All of this land was owned by Albert Armstrong (father of defendant Agnes Armstrong Trickey) who died in 1924. Mrs. Trickey and her brother Guy Armstrong divided the land, after their mother's death, by deeds to each other in 1933, conveying the land east of the creek to Mrs. Trickey and the land west of the creek to Guy Armstrong, who conveyed his part to plaintiffs in 1938. These deeds described the western boundary of defendants' land and the eastern boundary of plaintiffs' land as "the middle of the main channel" of Indian Creek. Indian Creek had been straightened many years before these deeds were made and defendants now claim to the course of the old channel, which they say was west of the present channel; and in places even west of the Highway. Plaintiffs claim the present channel is their boundary.

This controversy arose in 1960 when defendants built a north-and-south fence on the west side of Indian Creek between the Route V road and the creek. It appears there had been some contention about the matter for a year or two before and when the right of way for Route V on the west side of the creek was widened in 1959 deeds were taken from both plaintiffs and defendants. Ownership of the land on the east side of the creek had been in the Armstrong family since 1856. Mrs. Trickey's father who owned it in 1895 bought the land now owned by plaintiffs in that year. The description of the land conveyed to him in this 1895 deed was the same as the description in the deed from Mrs. Trickey to her brother in 1933 and in the deed from him to plaintiffs in 1938, showing the east boundary thereof as "the middle of the main channel" of Indian Creek, north of its junction with Allen's Fork. Likewise, Guy Armstrong's deed to Mrs. Trickey in 1933 described the west boundary of the land conveyed thereby as "the middle of the main channel" of Indian Creek to the point where Allen's Fork emptied into it. This same description was used by defendants in 1958 to create an estate in entirety in them.

Mrs. Trickey thought the creek was straightened by her father about 1905 but a defendants' witness, who said his uncle did the work, stated that it was straightened before 1900 and the court so found in its findings of facts. All of the parties said they did not claim anything except the land their deeds described but differed as to their interpretations of the boundary descriptions. Plaintiffs continuously farmed the land west of the Highway and had exercised some acts of ownership on the land between the road and the creek by frequently selling gravel from that side of the creek. At least twice recently the parties had split the proceeds of the sale of gravel from the creek and defendants had sold gravel only from the east side of the creek. There were no fences along either side of the creek, east of the road, until defendants started to build the one on the west bank. Mr. Trickey said he did this because he had begun to keep cattle along the creek. (Defendants lived in St. Louis for some time after plaintiffs bought their land but later

moved to their farm.) Mrs. Trickey when asked if they ever claimed any land west of the creek said: "We didn't exactly claim it. We knew we were paying taxes on it." Plaintiffs also claimed to paying taxes on that land but no tax receipts were produced by either party.

Apparently the creek has been in the same location it is now through and along the land involved ever since it was straightened by Mrs. Trickey's father 55 to 60 years before this fence controversy arose. In any event, its location is the same as it was when the land was divided between Mrs. Trickey and her brother, when he conveyed the land east of the creek to her and she conveyed the land west of the creek to him; and likewise when he conveyed to plaintiffs. "A deed should be construed with reference to the actual state of the land at the time of its execution. The court should as nearly as possible assume the position of the parties to the deed, and consider the circumstances of the transaction between them, and then read and interpret the words used in the light of these circumstances." 6 Thompson on Real Property, 1962 Replacement, 447, Sec. 3022; see also 11 C.J.S. Boundaries § 31, p. 578; 26 C.J.S. Deeds § 83, p. 817. In Weniger v. Ripley, 134 Or. 265, 293 P. 425, the court applied the presumption that the grantor intended to convey, and the grantee intended to take, "the premises as they openly appeared at the time when the deed * * * was executed." Our view is that this rule must be applied here and is decisive. In the Oregon case, the boundary between two tracts conveyed by a common owner in separate deeds to two different parties was "the middle of the main channel" of a river. About ten acres of the land were between two channels, each claimed to have been the main channel at some time. The court determined from the evidence that the south channel was the main channel when the deeds were made and held the description of the land conveyed was to be construed accordingly.

Applying these principles, we must construe the deeds of 1933 and 1938 as conveying these premises with the boundary between them, the middle of the main channel of Indian Creek, as it openly appeared at the time these deeds were made. Therefore, the location of the creek, in 1895, when Albert Armstrong bought the western part of the land, is immaterial; and the court found in favor of the right party, particularly since defendants never had possession of any land west of the creek and apparently never made any claim to it or showed any interest in possession of it until they wanted a fence there so they could keep cattle along the creek.

Defendants complain that the trial court did not make specific findings on each factual situation involved in their counterclaim in accordance with Rule 73.01(b), V.A.M.R. However, because of the view we take, we consider the findings of facts made were sufficient.

The judgment is affirmed.

All concur.

## On Motion for Rehearing or to Transfer to the Court en Banc

PER CURIAM:

Defendants point out that plaintiffs' deed from Guy Armstrong, as did their deed to him, recited after the boundary description: "and being the same real estate described in a warranty deed dated September 24, 1895, and recorded in Book 30 at page 86 of the land records of Cape Girardeau County"; this reference being to the deed by which Guy Armstrong's father obtained title before he straightened the creek. Defendants argue (citing 26 C.J.S. Deeds § 83, p. 820) that this is an expression in the deed which positively forbids construing the description of "the middle of the main channel" of Indian Creek as meaning the main channel as it openly appeared at the time the deeds of 1933 and 1938 were made; and that it requires the construction to be that the main channel,

as it was located at the time of the 1895 deed, was meant. Our view is that such an indefinite general reference to the 1895 deed does not have that effect and the motion for rehearing or in the alternative to transfer to the Court en Banc is overruled.